# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Alan Knox,                                   Case No. 16-cv-00879-WMW-KMM

      Petitioner,

v.                                                        **REPORT AND**
                                                          **RECOMMENDATION**

United States of America,

      Respondent.

Alan Knox, Reg. No. 96155-024, Federal Medical Center, PMB 400, Rochester, MN 55903, petitioner, pro se

Ana H. Voss, Esq., and D. Gerald Wilhelm, Esq., Assistant United States Attorney's, counsel for respondent

## I.      Introduction

The petitioner, Alan Knox, is an inmate at the Federal Medical Center in Rochester, Minnesota ("FMC-Rochester").  (Boldt Decl., ECF No. 7, ¶ 3.)  He is currently serving concurrent prison terms of 54 and 51 years as a result of convictions in the United States District Court for the Northern District of Illinois.  He received the 54-year sentence on December 29, 1987, and the 51-year sentence on March 19, 1992.  According to the United States Bureau of Prisons ("BOP"), Mr. Knox's projected release date is November 2, 2018.  (Boldt Decl. ¶ 3, Ex. A at 1.)

In this action, Mr. Knox seeks a writ of habeas corpus under 28 U.S.C. § 2241 commanding the BOP to recalculate his sentence.  (Pet., ECF No. 1.)  Mr. Knox asserts that the BOP has unlawfully failed to credit certain periods of time against his prison sentence.  Specifically, Mr. Knox claims that the BOP has failed to credit him with "Extra Good Time" ("EGT") under 18 U.S.C. § 4162.  Instead, he asserts that the BOP has only given him credit for "Statutory Good Time" ("SGT") under 18 U.S.C. § 4161.  Thus, Mr. Knox claims that the BOP has failed to provide him with the proper good-time credits, which will result in his being imprisoned past the point when the law requires his release.  (Pet. at 2-4.)

The respondent[1] asks this court to dismiss Mr. Knox's petition for two reasons. First, the respondent argues that Mr. Knox failed to exhaust his administrative remedies as required by law. Additionally, the BOP correctly calculated his sentence. (Resp., ECF No. 6.) Having reviewed the entire record, this Court concludes that Mr. Knox is not entitled to a writ of habeas corpus because he failed to exhaust his administrative remedies. Moreover, he has not shown that he is in custody in violation of the Constitution or laws of the United States. Accordingly, the Court recommends that Mr. Knox's petition be denied. 28 U.S.C. § 636; D. Minn. LR 72.2.

## II.    Discussion

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus under 28 U.S.C. § 2241 is a proper method for challenging the BOP's computation of jail credit. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). However, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

### A.    Exhaustion

Mr. Knox's petition should be dismissed because Mr. Knox did not exhaust his administrative remedies concerning his sentence computation. (Resp. at 9-10.)

### 1.    Legal Standard

When a federal prisoner challenges the computation or execution of his sentence through a writ of habeas corpus, he must first exhaust all available administrative remedies. *Tindall*, 455 F.3d at 888; *United States v. Pardue*, 363 F.3d 695, 699 (8th Cir. 2004); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000). This

---

[1]    L. LaRiva, the warden of FMC-Rochester, is the appropriate respondent in this action. 28 U.S.C. § 2242 (requiring an application for a writ of habeas corpus to allege the name of the person who has custody over him); 28 U.S.C. § 2243 (indicating that a writ of habeas corpus shall be directed to the person having custody of the person detained); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held[.]").

exhaustion requirement is not jurisdictional, *Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007), and thus, a failure to exhaust may be excused when an attempt to exhaust would be futile, *Frango v. Gonzales*, 437 F.3d 726, 728-29 (8th Cir. 2006).

## 2.   The BOP's Available Grievance Process

The BOP has a four-tiered program to address inmates' grievances. (Boldt Decl. ¶ 6 (citing 28 C.F.R. § 542.10, *et seq.*).)  Under this program, an inmate must first attempt to resolve the issue informally with prison staff. 28 U.S.C. § 542.13(a) ("[A]n inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a request for Administrative Remedy.").  The BOP provides a form (BP-8) for inmates to complete to make such informal requests. (Boldt Decl. ¶ 7.)  Second, if the informal resolution process fails to resolve the issue for the inmate, he may file a formal written Administrative Remedy Request using a different form (BP-9). 28 C.F.R § 542.14(a); (Boldt Decl. ¶ 7.).  At the third step, "[a]n inmate who is not satisfied with the Warden's response [to this formal request] may submit an appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  Finally, if the inmate "is not satisfied with the Regional Director's response [he] may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. . . .  Appeal to the General Counsel is the final administrative appeal." *Id.*; (Boldt Decl. ¶ 7.)  To fully exhaust his administrative remedies, a federal prisoner must complete each of these four steps. 28 C.F.R. §§ 542.10-.19.

## 3.   Mr. Knox's Exhaustion Attempts

Mr. Knox raised his concerns regarding the computation of his sentence with one member of the FMC-Rochester staff.  On October 29, 2014, using an "inmatemessage" account, Mr. Knox sent an email to a Mr. Nerstad, with whom he had spoken twelve days earlier in the "chow hall" at the prison. (Pet., Ex. 4.) Mr. Knox was following up on a conversation he had with Nerstad about the computation of Mr. Knox's sentence. (*Id.*)  In the email, Mr. Knox explained that he had previously received documentation indicating that he was receiving ten days of SGT per month and five days of EGT per month. (*Id.*)  However, he apparently believed he should be entitled to more credits against his sentence as a result of his job within the prison. (*Id.*)  On October 30, 2014, Mr. Nerstad responded to Mr. Knox's message.  Mr. Nerstad confirmed that Mr. Knox had been earning SGT at a rate of ten days per month and EGT at a rate of five days per month while he had been incarcerated. (*Id.*)  Mr. Nerstad also told Mr. Knox, "if you are arguing you

should be getting an additional 15 days off per month I can assure there is no statute to allow you to receive 30 days per month off your sentence." (*Id.*)

On November 5, 2014, Mr. Knox sent Mr. Nerstad another email concerning his projected release date of November 2, 2018. (Pet., Ex. 1.) In that email, Mr. Knox wrote:

> It states in my program review of 10-29-14, that I have a projected release date of 11-02-18. This date includes calculated good time. However it states in 18 U.S.C 4206 Parole Determination Criteria section (D) "Any prisoner, serving a sentence of 5 years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served Two-Thirds of each consecutive term or terms, or after serving 30 years of each consecutive term or terms of more than 45 years including any life term, whichever is earlier[.]"
>
> My sentence is 55 years. I started my time in 1986. I will have served 30 years in 2016. That should be my release date according to the above statute, and not the program review statement of 2018.

(*Id.*) In a response written the following day, Mr. Nerstad explained that Mr. Knox's sentence would not be two-thirds complete until October 23, 2020, which would be after his projected November 2, 2018 release date. (*Id.*) Mr. Nerstad also told Mr. Knox that he could not use a 30-year date from 1986 because his concurrent 51-year sentence began several years later in 1992. (*Id.*)

## 4.   Failure To Exhaust

Aside from the two emails Mr. Knox sent to Mr. Nerstad, he did nothing to exhaust his administrative remedies through the four-part grievance procedure maintained by the BOP.[2] Even if the Court assumes that Mr. Knox's emails to

---

[2]   The BOP maintains information about inmates' administrative complaints, and has done so since July 1980. (Boldt Decl. ¶ 10.) The BOP keeps these records by logging the formal written complaints into a SENTRY database, which assigns each initial complaint a "Remedy ID Number" once it is entered. (*Id.* ¶¶ 11-12.) According to a search of the SENTRY database on April 12, 2016, Knox had not filed any administrative remedies concerning the computation of his sentence during his time in the custody of the BOP. (*Id.* ¶ 14; *id.*, Ex. B ("No remedy data exists for this inmate").)

Mr. Nerstad satisfied the first step of the BOP's grievance procedure—i.e., an informal inmate request to staff—there is no other evidence in the record that Mr. Knox completed an Administrative Remedy Request, appealed to the Regional Director, or appealed to the General Counsel as required.  Thus, Mr. Knox failed to exhaust his administrative remedies, and he has not provided any reason that he should be excused from the exhaustion requirement.  As such, Mr. Knox is precluded from obtaining habeas relief on his computation-of-sentence claim.

Although Mr. Knox's failure to exhaust provides an independent basis on which to deny the petition, the Court nonetheless considers the merits of Mr. Knox's habeas claim.

## B.  Sentence Calculation

Mr. Knox argues that he did not receive appropriate deductions from his sentence for SGT and EGT as required by the applicable law.  (Pet. at 4.)  He also argues that his mandatory parole review date should be calculated based upon his Two-Thirds/Thirty-Year date minus the SGT and EFT he as accrued.  (*Id.* at 3, 4.)  This court addresses each of these issues in turn below and concludes that Mr. Knox has failed to show that he is in custody in violation of the Constitution or laws of the United States.

### 1.  Mr. Knox's SGT and EGT Claim

#### (a)  Mr. Knox's Two Concurrent Sentences and the Applicable Statutes Governing Good Time Credit

Law enforcement officers arrested Mr. Knox on August 5, 1986.  (Henderson Decl. ¶¶ 5, 12; *id.*, Ex. A at 4 (reflecting that Mr. Knox was in custody beginning on Aug. 5, 1986).)  On December 29, 1987, the United States District Court for the Northern District of Illinois sentenced Mr. Knox to a 54-year term of imprisonment. (Henderson Decl. ¶ 5, Ex. B (criminal judgment in *United States v. Knox*, 86-CR-572-3 (N.D. Ill. entered Dec. 29, 1987)); *see also* Pet. at 2.)  The court imposed that sentence after a jury convicted Mr. Knox[3] on November 24, 1987.  (*See* Henderson Decl. ¶ 5; Pet. at 2.)

---

[3]    The jury convicted Mr. Knox of (1) conspiring to commit an offense against or to defraud the United States; (2) engaging in interstate travel to promote unlawful activity; (3) receiving an explosive device; and (4) unlawfully possessing weapons. (Henderson Decl ¶ 4; *id.*, Ex. B.)

While Mr. Knox was in custody for the offenses that resulted in his 1987 sentence, a grand jury indicted Mr. Knox on additional charges. (Pet. at 2.) In this later case, Mr. Knox pled guilty to engaging in racketeering activity, using interstate commerce facilities in the commission of murder for hire, and aiding and abetting. (Henderson Decl., Ex. C.) On March 19, 1992, the Northern District of Illinois sentenced him to 51 years in prison, to run concurrent to the 54-year sentence he had received in 1987. (Henderson Decl. ¶ 6, Ex. C (criminal judgment in *United States v. Knox*, 89-CR-908-24 (N.D. Ill. entered Mar. 19, 1992)); *see also* Pet. at 2.) Mr. Knox's conduct that led to these additional charges occurred years before; his racketeering activity offense concluded in 1966, and his involvement in the murder for hire ended in 1985. (Henderson Decl., Ex. C (judgment reflecting date offense concluded).)

Because Mr. Knox committed the offenses leading to his concurrent 1987 and 1992 sentences before November 1, 1987, the BOP has calculated his sentence under the statutory scheme established before the enactment of the Comprehensive Crime Control Act of 1984 ("CCCA"), codified as amended in scattered sections of Chapter 18 of the U.S. Code.[4] (Henderson Decl. ¶ 7.)

Under 18 U.S.C. § 4163 (repealed), a prisoner "shall be released at the expiration of this term of sentence less the time deducted for good conduct." Before Congress enacted the CCCA and § 3624, 18 U.S.C. § 4161 governed federal prisoners' eligibility for SGT deductions from their sentences. Section 4161 stated:

> Each prisoner convicted of an offense against the United States and confined in a penal or correctional institution for a definite term other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been subjected to punishment, shall be entitled to a deduction from the term of his sentence beginning with the day on which the sentence commenced to run, as follows: . . . Ten days for each month, if the sentence is ten years or more.

18 U.S.C. § 4161 (repealed).

---

[4]    *Akbar v. Babcock*, Civ. No. 09-810-DSD-SRN, 2009 WL 3062001, at *4 (D. Minn. Sept. 21, 2009) ("Sentence computations and the award of SGT credit for offenses committed prior to November 1, 1987, are governed by 18 U.S.C. § 4161 (repealed)[.]").

In addition to the ten days of SGT per month the BOP could deduct from Mr. Knox's sentence, Mr. Knox can also earn up to five days per month of Extra Good Time, or EGT, under 18 U.S.C. § 4162 (repealed).  Section 4162 stated:

> A prisoner may, in the discretion of the Attorney General, be allowed a deduction from his sentence of not to exceed three days for each month of actual employment in an industry or camp for the first year or any part thereof, and not to exceed five days for each month of any succeeding year or part thereof.  In the discretion of the Attorney General such allowance may also be made to a prisoner performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations.  Such allowance shall be in addition to commutation of time for good conduct, and under the same terms and conditions and without regard to length of sentence.

18 U.S.C. § 4162 (repealed).

### (b)    The BOP's Calculation of Mr. Knox's Sentence

Under 18 U.S.C. § 3568 (repealed), a convicted person's prison sentence begins to run the day that the person is received at the penitentiary, reformatory, or jail for service of the sentence.  Thus, Mr. Knox's initial 54-year sentence commenced on December 29, 1987.  The BOP began computing Mr. Knox's concurrent sentences on December 29, 1987, the day that Knox was sentenced in his first case.  (Henderson Decl., Ex. A at 4 ("Date Computation Began").)  Because the Northern District of Illinois imposed the 51-year sentence in 1992, more than four years after Mr. Knox began serving his 54-year sentence, his concurrent sentences are aggregated for a total term of 55 years, 2 months, and 18 days.[5]  (Henderson Decl. ¶ 11; *id.*, Ex. D, BOP Program Statement 5880.30, Ch. VII, ¶ 9.b., Aggregated concurrent sentence (July 16, 1993) (describing process for aggregating concurrent sentences when there is an "overlap" between the full-term for an earlier and a later concurrent sentence).)

However, the calculus does not stop there.  Mr. Knox's sentence is affected, in part, by the time he spent in custody prior to the imposition of the initial 54-year sentence, following his arrest on August 5, 1986.  The BOP properly gave Mr. Knox

---

[5]    *See* 28 C.F.R. § 2.5 ("When multiple sentences are aggregated by the Bureau of Prisons pursuant to 18 U.S.C. § 4161 and 4205, such sentences are treated as a single aggregate sentence for the purpose of every action taken by the Commission pursuant to these rules, and the prisoner has a single parole eligibility date as determined by the Bureau of Prisons.").

credit toward his sentence for the 511 days he spent in custody until he received that initial sentence.  18 U.S.C. § 3568 (repealed) (requiring the Attorney General to give a person credit for presentence time spent in custody in connection with the offense for which the sentence is imposed); (Henderson Decl. ¶ 12, Ex. A at 4 (demonstrating that the BOP provided Mr. Knox with this prior custody credit)).  According to its policies, the BOP deducted the 511 days of prior custody credit from Mr. Knox's aggregated sentence and determined an "expiration full term" date (which is also referred to as the EFT date or "full term date") of October 23, 2041.  (Henderson Decl. ¶ 13; *id.*, Ex. A at 4; Program Statement 5880.30, Ch. VII, ¶ 3.a. (describing how the BOP calculates an EFT date by deducting prior custody credit from the sentence).)  This date represents the date that the BOP would be required to release Mr. Knox if he served his entire sentence and never received any credit for SGT under § 4161 or EGT under § 4162.  (Henderson Decl. ¶ 13.)

Because Mr. Knox's sentence is greater than 10 years, the BOP deducts ten days per month of SGT from his full term date.  18 U.S.C. § 4161 (repealed) (providing that a prisoner with a sentence of "ten years or more" earns SGT at a rate of "ten days for each month").  Given the length of Mr. Knox's sentence, the BOP projects that the total SGT that he will be able to earn during his prison term is 6,626 days, which is just over 18 years.  (Henderson Decl. ¶ 15; *id.*, Ex. A at 4.)  Deducting these 6,626 days of SGT from Mr. Knox's full term date of October 23, 2041, results in a full term date of September 2, 2023.  (*Id.* ¶ 15; *id.*, Ex. A at 4.)

In addition to SGT, Mr. Knox is eligible to accrue EGT at a rate of three days per month for the first twelve months and five days per month for each month after that.  18 U.S.C. § 4162 (repealed).  As of April 11, 2016, the BOP had calculated Mr. Knox to have earned 1,651 days of EGT, having lost only 40 days.  (Henderson Decl. ¶ 17, Ex. F.)  Presuming that Mr. Knox remains eligible to accrue EGT, the BOP calculates that he could earn 1,717 total days.  (*Id.* ¶ 18, Ex. G.)  Deducting these 1,717 days from Mr. Knox's full term minus statutory release date results in a full-term-minus-statutory-and-extra-good-time release date of November 2, 2018, the date the BOP is using to release Mr. Knox.  Accordingly, Mr. Knox's argument that he did not received appropriate SGT and EGT credit fails.

## 2.  Mr. Knox's Two-Thirds Mandatory Release Claim

The full term date, however, is not the only date that Mr. Knox might leave prison.  Section 4206 provides that a prisoner "serving a sentence of five years or longer" who has not yet been released "shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term,

whichever is earlier . . . ." 18 U.S.C. § 4206(d) (repealed).  This mandatory parole date (which is different from the full term date) is commonly referred to as a Two-Thirds/Thirty-Year date.

Mr. Knox asserts that the BOP has erroneously calculated his Two-Thirds/Thirty-Year date under § 4206.  The best form of Mr. Knox's argument is that the BOP should have first calculated his Two-Thirds/Thirty Year date and then further subtracted his SGT and EGT.  In short, Mr. Knox argues that the good time he has earned during his incarceration should be applied in addition to the sentence reduction created by operation of his Two-Thirds/Thirty Year date.

Consideration of Mr. Knox's argument requires this court to interpret various statutory sentencing provisions.  "The starting point in interpreting a statute is always the language of the statute itself."  *United States v. Talley*, 16 F.3d 972, 975 (8th Cir. 1994).  "If unambiguous, the language of a statute is ordinarily to be regarded as conclusive in the absence of a clearly expressed legislative intent to the contrary."  *Id.* (quotation and citation omitted).  And, "[w]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  Unfortunately for Mr. Knox, careful analysis of the two statutes upon which he relies does not support his interpretation that they must be read in conjunction with one another.

The court in *LaMagna v. United States Bureau of Prisons*, 494 F. Supp. 189 (D. Conn. 1980), addressed an argument very similar to Mr. Knox's.  The *LaMagna* plaintiffs argued that, where a prisoner's mandatory release date occurs before his mandatory parole date, the BOP "should deduct any extra good time awarded pursuant to § 4162 from the mandatory parole date (§ 4602(d)) rather than from the mandatory release date (§ 4163)."  494 F. Supp. at 193.  The *LaMagna* court looked to the language of the statutes and determined that SGT and EGT serve "fundamentally" different interests than parole.  *Id.* at 193.  Good-time credits "are designed primarily to foster rehabilitation and to encourage good institutional conduct by enabling an inmate to reduce his prison time."  *Id.* (citations omitted).  Parole, on the other hand, is "directed primarily toward post-confinement societal conduct" and is "meant to encourage the reintegration of good risk offenders into society as soon as they were deemed sufficiently rehabilitated to be given a chance to lead productive lives."  *Id.*  The court even noted that the statutory provisions governing mandatory release are codified in different chapters of the U.S. Code than those governing mandatory parole.  *Id.* at 193 n.12.  Looking at the plain language of the statute and the historical purposes of both good-time credits and parole, the *LaMagna* court

9

determined that SGT and EGT should not be credited towards the calculation of a prisoner's mandatory parole date. *Id.* at 194.

As the *LaManga* court's analysis shows, Mr. Knox's argument is inherently flawed. It conflates two statutory provisions that serve two different objectives. In short, Mr. Knox is trying either to use his mandatory release date under § 4163 (taking into account his accrued SGT and EGT) as a starting point for establishing his Two-Thirds/Thirty-Year date under § 4206(d), or to deduct his SGT and EGT from his Tw-Thirds/Thirty-Year date. However, nothing in § 4206(d) mentions good-time credit, and § 4163 does not refer to parole or reintegration. This court presumes that these omissions were intentional. *See Keene Corp.*, 508 U.S. at 208. Moreover, mandatory release and parole serve different purposes. Parole exists to encourage offenders to reenter society and lead productive lives. *See LaMagna*, 494 F. Supp. at 193. Good-time credits, on the other hand, are designed to foster rehabilitation and to encourage good behavior while incarcerated. *Id.* Any good-time credit that Mr. Knox has accrued has no effect on his Two-Thirds/Thirty-Year date.

As this applies to Mr. Knox, the calculation for his Two-Thirds/Thirty-Year date begins on March 19, 1992, the date his 51-year term of imprisonment was imposed. After subtracting 511 days from this sentence for prior custody, Mr. Knox's Two-Thirds/Thirty-Year date is October 23, 2020. Based on the foregoing, Mr. Knox's argument that the BOP has miscalculated his Two-Thirds/Thirty Year date fails.[6]

---

[6] It is also worth noting that even if Mr. Knox's Two-Thirds/Thirty-Year date were miscalculated Mr. Knox would not be entitled to automatic release on that date. The Parole Commission reviews each prisoner's record to determine whether he should be released on his Two-Thirds/Thirty-Year date, and after the review either the commission holds a parole hearing or the prisoner is granted parole. *See* 28 C.F.R. § 2.53(b). In other words, as the *LaMagna* court recognized, "'mandatory' parole for eligible offenders . . . at the two-thirds point is not a certainty." 494 F. Supp. at 194. If his argument were successful, Mr. Knox would be up for parole review rather than entitled to release. Nonetheless, for the reasons stated above, his argument fails.

## III.   Recommendation

In sum, Mr. Knox's challenge to the BOP's calculation of his sentence must fail not only because he failed to exhaust his administrative remedies, but also on the merits.  Based on the foregoing proposed findings and conclusions, **IT IS HEREBY RECOMMENDED** that Mr. Knox's petition for writ of habeas corpus be denied.

Date:  September 1, 2016

 _s/ Katherine Menendez_
Katherine Menendez
United States Magistrate Judge

## <u>NOTICE</u>

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.